JUSTIN E. WHATCOTT, IDAHO STATE BAR NO. 6444
ACTING UNITED STATES ATTORNEY
JACK B. HAYCOCK, IDAHO STATE BAR NO. 2942
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
801 E. SHERMAN AVE SUITE 192
POCATELLO, ID 83201
TELEPHONE: (208) 478-4166
FACSIMILE:  (208) 478-4175

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| UNITED STATES OF AMERICA, | Case No. 4:25-mj-00182-DKG |
|---|---|
| Plaintiff, | |
| vs. | **UNITED STATE'S MEMORANDUM AND PROFFER IN SUPPORT OF PRETRIAL DETENTION** |
| EDWARD KAY, | |
| Defendant. | |

The United States of America, by and through Justin D. Whatcott, Acting United States Attorney, and the undersigned Assistant United States Attorney for the District of Idaho, hereby submits this proffer in support of Defendant's detention pending his return to the District of Massachusetts under Rule 5(c)(3) pursuant to the Bail Reform Act, Title 18, United States Code, Section 3142. As explained herein, the Government seeks the continued pretrial detention of Defendant, Edward Kay, as a risk of non-appearance, as a danger to the safety of others and the community, and because he poses a serious risk of threatening a witness or obstructing justice.

UNITED STATE'S MEMORANDUM AND PROFFER IN SUPPORT OF PRETRIAL DETENTION
1

The Government respectfully requests that the Defendant be detained pending his return to the District of Massachusetts to face trial.

The Defendant faces a charge of Interstate Stalking under 18 U.S.C. § 2261A, based on a Complaint filed in the District of Massachusetts on July 10, 2025.  He appears in the District of Idaho under Rule 5(c)(3) of the Federal Rules of Criminal Procedure.  The maximum penalties are as follows:

- Maximum 5 years incarceration
- $250,000 fine
- 3 years of supervised release
- $100 special assessment

Detention

The government is moving to detain the defendant pending trial on three independent bases under 18 USC §§§ 3142(f)(1)(A), (f)(2)(A), and (f)(2)(B), because he is a danger to the community, poses a serious risk of flight, and poses a serious risk of threatening a witness or obstructing justice.

Danger to the community

- A court may order a defendant to be detained pending trial when the government establishes, by clear and convincing evidence, that the defendant is a danger to the community.
- One of the predicates listed under 18 USC § 3142(f)(1) that establishes that the defendant is a danger to the community is that the case involves a "crime of violence."
- For the purposes of the Bail Reform Act, a "crime of violence" is defined as:
    - (A) an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another; (B) any

UNITED STATE'S MEMORANDUM AND PROFFER IN SUPPORT OF PRETRIAL DETENTION
2

- other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.
- In determining whether an offense is a crime of violence, courts use a categorical approach – meaning that the court examines the elements of the offense as written, rather than examining the offense based on the facts or particularities of the instant case. *See Sessions v. Dimaya*, 584 U.S. 148, 153 (2018).
- At least one court has found that the specific subsection charged here (cyberstalking, 18 USC § 2261A(2)(B)), is a crime of violence under the Bail Reform Act.
    - See *U.S. v. Kukstis*, 4:18-mj-04174-DHH (D. Mass 2018).
    - In *Kukstis*, the court found 2261A(2)(B) met the definition of a crime of violence under clause B of the definition of a crime of violence (the residual clause).
    - The residual clause inquiry turns on the "nature of the offense" – this requires the court to determine whether the "ordinary case" of an offense presents a substantial risk that physical force against the person or property of another will be used in the course of committing the offense. *Dimaya*, 584 U.S. at 153.
    - The court reasoned that because the "ordinary case" of stalking involves conduct undertaken with "the intent to kill, injure, harass, intimidate," stalking categorically involves a substantial risk of the use of physical force.

UNITED STATE'S MEMORANDUM AND PROFFER IN SUPPORT OF PRETRIAL DETENTION
3

- o For support, the court cited to statistics[1] regarding stalking victims and the legislative history[2] of the stalking statute.
- Several other courts have found that a related sub-part of that statute, § 2261A(2)(A) also qualified a crime of violence under the Bail Reform Act.
  - o *See U.S. v. Grooms*, 3:15-mj-00025, 2015 WL 1982097 (S.D.W.VA 2015).
  - o *See U.S. v. Shrader*, 1:09-cr-00270, 2010 WL 503092 (S.D.W.VA 2010).

Serious risk of threating a witness or obstructing justice

- The government may also move for pretrial detention of a defendant where there is a "serious risk" that the defendant will attempt to "threaten, injure, or intimidate a prospective witness or juror." 18 U.S.C. § 3142(f)(2)(B). A showing on this ground must be by clear and convincing evidence.
- In several cyberstalking cases, courts have found that there would be a serious risk to the victim were the defendant to be released.
  - o *See United States v. Hollingberry*, 2020 WL 2771773, at *3 (D. Ariz. May 28, 2020), *aff'd,* No. 20-10183, 2020 WL 5237342 (9th Cir. July 23, 2020) (agreeing with the Magistrate Judge that there is a serious risk defendant, if released, will obstruct or attempt to obstruct justice, and that he will threaten and intimidate the victim because the magistrate judge had found the defendant had "weaponized the internet" against the victim).

---

[1] 46% of stalking victims experience one or more violent incidents by the stalker, approximately 29% of stalkers vandalize the victim's property, and 9% of stalkers kill or threaten to kill the family's pets. Discussed in District Judge Duffy's dissent in *Malta-Espinoza v. Gonzales*, 478 F.3d 1080 (9th Cir. 2007).

[2] Congress enacted the statute as part of the Violence Against Women Reauthorization Act of 2005, Pub. L. No. 109-162, 119 Stat. 2960, which indicates a congressional intent that the offenses under this statute be considered crimes of violence for purposes of holding a detention hearing.

UNITED STATE'S MEMORANDUM AND PROFFER IN SUPPORT OF PRETRIAL DETENTION
4

- o *See United States v. Waldman*, No. 18-MJ-4701 (SN), 2018 WL 2932729, at *3 (S.D.N.Y. June 12, 2018) (the government produced evidence that multiple court orders prohibiting the defendant from contacting the victim were ineffectual in dissuading him from threatening her and the defendant found increasingly creative ways to hide his identity in contacting the victim, including through anonymous email services. The court concluded that "[t]he many threats Waldman appears to have made toward the victim over a prolonged period of time, his apparent defiance of prior court orders, and his alleged attempts to conceal his identity from authorities all demonstrate that there is a 'serious risk' that Waldman will 'attempt to threaten, injure, or intimidate' the victim (a prospective witness) if he is released from detention pending trial.").

Serious risk flight

- The government is also entitled to move for pre-trial detention if the defendant poses a serious risk of flight. A showing on this ground must be made by a preponderance of the evidence.

18 USC 3142(g) Factors

Nature and circumstances of the offense

- Over five months, between January and June 2025, the defendant harassed and intimidated the victim over email and LinkedIn.
- The defendant's fixation with the victim began in January when he met the victim after enrolling as a student in her class on psychosis, which took place over Zoom.
- The defendant had one one-on-one meeting with the victim before the semester started and then attended one of the victim's classes.

UNITED STATE'S MEMORANDUM AND PROFFER IN SUPPORT OF PRETRIAL DETENTION
5

- This was enough for the defendant to become obsessively focused on the victim.
- Among other things, the defendant:
    - Expressed his love for the victim, telling her she was "the most beautiful thing" he had ever seen
    - Mentioned her minor son by name several times in his emails
    - Told her she was not "unreachable" to him
    - Wrote a poem about the victim in which he described her as a mouse living in a maze that needed to be set on fire so that she could be freed
    - Threatened to file a complaint against her to the Board of Registration of Psychologists
    - Then actually followed through on that threat and filed a complaint against her to the Bureau of Health Professions Licensure.
- In April, the victim asked the defendant to stop contacting her. He did not.
- He continued to contact her by email, including by an anonymous email with the username "[victim's name]conscience @protonmail.com" to again profess his love for her.
- The defendant also told others about his feelings for the victim – he met with another professor at the University where the victim was teaching and told her about his obsession with the victim and how he wanted to separate her from her husband. He also told that professor that he was a psychopath.
- The defendant also talked about the victim to his life partner in such a concerning manner that his life partner reached out to the victim to warn her about the defendant's obsession.

UNITED STATE'S MEMORANDUM AND PROFFER IN SUPPORT OF PRETRIAL DETENTION
6

- The partner told the victim that the defendant considered the victim to be his "twin angel soul mate" and that he believed his future involved a romantic relationship with the victim.
- At the end of June, the University's police department served the defendant with a cease and desist order.
- This did not completely deter him – he continued to post on his public LinkedIn profile mentioning the victim by name and professing his love for her.
- His conduct between January and June, caused the victim substantial emotional distress and placed her in fear of physical harm.
- She considered moving but couldn't afford it and instead invested in substantial home security tools, including door bars, chain door locks, contact sensors, etc.
- She woke up every day feeling like she could not get away from him, wondering if he would show up at her house, her parent's house, or her son's school.

History and characteristics of the defendant / Nature and seriousness of the danger to any person or the community

- Defendant has been diagnosed with bipolar disorder and was previously hospitalized following an incident here in Idaho at the Home Depot in Idaho Falls.
- Per police reports, the defendant carried a concealed weapon into a Home Depot and threatened to shoot another male.
- As recently as April of this year, his life partner expressed concern for his mental state. In her message to the victim, she said suggested the defendant was in a manic state and that he could self-destruct or sabotage his life.

- Defendant is also passionate about guns. His partner told the victim this ("Edward is passionate about them and is very protective of his right to own them and carry them for protection…").

- Law enforcement found a lot of guns, estimate of around 70 guns, when they executed a search warrant at his home on Wednesday, 7/16/2025.

- Defendant also told victim that he has a background in web security and it was apparent to her that he had done some research on her before they spoke for the first time.

- He has demonstrated a proficiency with using different modes of communication, including several different email addresses and a LinkedIn account, to contact his victim.

- He also is someone who clearly doesn't listen when someone tells him no or stop. The victim told him to stop contacting her; he did not. The university police department sent him a cease and desist; he continued to post about the victim on his public LinkedIn profile.

- These facts support a finding that the defendant presents a danger to the victim and to his local community. It also supports a finding that the defendant presents a serious risk to the victim who is a prospective witness for the government.

- Additionally, defendant appears to have the means to travel abroad frequently and extensively – he was in Mexico, Germany, and the U.K., in the past few months

- He continued to email and harass the victim from these locations.

- Now that he is facing a maximum of 5 years incarceration, he certainly would have a motive to flee abroad and not return for further court proceedings and therefore presents a serious risk of flight.

Weight of the evidence

- Finally, the weight of the evidence is strong here.
- Government has to prove that the defendant, (1) with the intent to harass or intimidate, (2) used any electronic communication system of interstate commerce to engage in a course of conduct, (3) that caused or would be reasonably expected to cause substantial emotional distress to the victim.
- Here, the facts already discussed establish these elements:
    - Defendant's intent is clear from his actions and from what he has said to others. He repeatedly emailed the victim, even after she told him to stop. He put her career in jeopardy by filing a complaint against her. He repeatedly mentioned her minor son by name in his communications. He told his life partner that he believed he would be in a romantic relationship with the victim, and he told another professor about wanting to separate the victim from her husband.
    - He used two forms of electronic communication – email and LinkedIn – to communicate with the victim.
    - And the victim experienced substantial emotional distress – her life was upended by this harassment, she was constantly worried about what the defendant would do next, she thought about moving, she relocated her family to a friend's house when she thought the defendant might come to Boston, she invested money in home security systems for herself and her parents.

There are therefore no conditions of release that could reasonably assure the safety of the victim or the community, that the defendant will not return to these behaviors and continue to threaten the victim (a prospective witness), or that the defendant will return for further court proceedings,

UNITED STATE'S MEMORANDUM AND PROFFER IN SUPPORT OF PRETRIAL DETENTION
9

especially given his mental illness, his apparent means to travel internationally, his possession of a significant number of guns, his background in web security, and the ubiquity of internet access.

Dated this 17th day of July, 2025.

                                        JUSTIN D. WHATCOTT
                                      ACTING UNITED STATES ATTORNEY
                                      By:

                                      */s/ Jack B. Haycock*
                                      JACK B. HAYCOCK
                                      Assistant United States Attorney